UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

CORPUS CHRISTI DIVISION

United States Courts
Southern District of Texas
FILED

JAN 2 8 2026

Nathan Ochsner, Clerk of Court

| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL NO. 2:25-CR-473-03 |
| | § | |
| | § | |
| ROBERT LUIS SALDANA, | § | |
| Defendant. | § | |

## STIPULATION OF FACT

### I.

The Defendant, ROBERT LUIS SALDANA, has agreed to stipulate with the United States Attorney for the Southern District of Texas, Nicholas J. Ganjei, through the undersigned Assistant United States Attorney, to the following facts and expected testimony concerning the violation(s) of Title 18, United States Code, Sections 1201(c) and 2, alleged in Count One of the above-numbered Indictment. The parties agree that these facts are sufficient to establish a factual basis for the Defendant's plea pursuant to Fed. R. Crim. P. 11(b)(3). The parties further agree that other facts exist, and that those facts may be relevant at sentencing herein.

The parties stipulate and agree to the following:

Count 1:

1.  That the defendant, and others known and unknown to the grand jury, did conspire to knowingly act contrary to law to seize, confine, inveigle, decoy, kidnap, abduct, or carry away C.O.B., as charged;

2.  That the defendant seized, confined, inveigled, decoyed, kidnapped, abducted, or carried away C.O.B. for some reward or purpose or benefit;

3.  That the defendant seized, confined, inveigled, decoyed, kidnapped, abducted, or carried away C.O.B. for some reward or purpose or benefit; and

4. The defendant willfully used the mail or any means, facility or instrumentality of interstate or foreign commerce in committing or in furtherance of the commission of the offense.

Furthermore, had the case proceeded to trial, the United States would have evidence as outlined below and would have called witnesses to testify that:

## II.

## INCEPTION OF INVESTIGATION

On March 14, 2025, law enforcement interviewed C.O.B., herein after referred to as "Victim" (V) who stated that earlier that same day, (s)he was confined, physically assaulted, threatened, and ultimately robbed of property (cash and credit) by Almaguer, Indicted Co-Conspirator (IC-C), and **SALDANA**.  The ordeal lasted approximately four hours.  Photos were taken of injuries V sustained, which included bruising and red marks on his/her head, arm and torso.

V stated that on March 13, 2025, (s)he received a Facebook message from an individual who was using the name Juan Briseno (Briseno) asking if V was available to transport tires.  V had previously responded to a Facebook marketplace advertisement in December of 2024 placed by Briseno who was asking for a delivery driver, but that delivery never took place.  When V was re-contacted on March 13, 2025, (s)he was provided the address for Danny's Tire Shop as the location where (s)he was supposed to go to pick up the tires.  V was told he would be paid $750 by "Danny's Tire Shop" for transporting the tires.

When V arrived at Danny's Tire Shop on March 14th, (s)he was escorted into an office by IC-C.  Several other individuals walked in and out of the office and V became nervous when two

2

unknown males walked into the office and locked the door. This prompted V to send his wife and another individual his GPS location via text:



## A.
## VIDEO CALL #1

IC-C then made a video call to Almaguer (V identified Almaguer from a photo lineup) in the presence of several individuals in the office. Almaguer yelled at V saying, "Who the hell sent you?! You son of a bitch, the guy that sent you has already stole from me and you are going to pay me!" V responded by saying (s)he was there in response to an advertisement and did not know what Almaguer was talking about. Almaguer continued, "(d)on't act dumb, I know you know them!" V then heard Almaguer instruct the other men in the room to beat up V.

At this time, V saw one of the men pull out what looked like a gun, and another unknown male said, "(n)o, no, with your hand." V identified **SALDANA** as the person that hit him/her over the head, knocking him/her to the ground. While still on the ground, **SALDANA** continued hitting V all over his/her body. It was at this time that V realized that the gun was really a pellet gun. Almaguer was still on the video call during this exchange and V heard IC-C tell Almaguer that they would handle everything and then ended the video call.

3

### B.
### VIDEO CALL #2

V was then moved to a different office within the Danny's Tire Shop. This office was described as having a couch. IC-C then made another video call to Almaguer. Almaguer again stated that he knew that V worked for "him" and that V was going to pay. Almaguer continued, "(d)on't act stupid, the Cubans already stole from me!" V again denied knowing to what Almaguer was referring.

Almaguer then stated that the tires in question were stolen, and that Almaguer could make a call to the FBI and that V would go to prison for several years. IC-C then ended the call.

During this call, V stated that (s)he could see and hear the background of Almaguer's location and opined that Almaguer was in Mexico. A review of border crossing records showed that Almaguer crossed into Mexico via land through the Falcon Heights Point of Entry ("POE") on March 9, 2025, and returned to the United States on March 18, 2025, via the same POE. This confirms V's assertion that Almaguer was in Mexico at the time the calls were made. V stated that there was always at least three men with him/her, including IC-C and **SALDANA**.

### C.
### FRAUDULENT CASH AND CREDIT TRANSACTIONS
### (chronological order)

### 1.
### Transaction #1 – Credit

After having been physically beaten, IC-C, using V's social security number, email accounts, and bank account information, opened two lines of credit, one with Acima Credit, LLC 1

---

1 Acima works as a lease-to-own service. Instead of financing, ACIMA purchases items from retailers and leases them to customers. The customers then make lease payments to ACIMA until they "own" the property purchased from the retailer by ACIMA. Customers can "apply" for this lease-to-own service (which is essentially credit) by entering their personal information to be "qualified" in-store at a participating retailer. While the retailer is

4

(Acima) and the other with Snap Finance

The investigation revealed that Almaguer used his cellular telephone number (361) 533-5704, while he was physically in Mexico, to apply to Acima for an account in V's name. IC-C used V's phone to apply for an account with Snap using V's personal information. V received emails from Acima and Snap Finance indicating that (s)he had been approved for $2,325 and $3,590, respectively.

The records obtained from Acima showed log-ins were conducted on March 14, 2025, from an email address that is associated with the Danny's Tire Service merchant account. Acima is headquartered in Sandy, Utah. Snap Finance is located in West Valley City, Utah.

The records also indicated that Acima had communicated previously with an employee of Danny's Tire Service identifying himself as "IC-C". The investigation has shown that IC-C uses the same name. IC-C is a foreign national and is not authorized to live and/or work in the United States.

With respect to Snap Finance, records obtained confirm V's rendition of the facts. The following is the information received from Snap Finance.

| Customer: | ▮▮▮▮▮▮▮ | Status: | Complete | Started On: | 03/14/2025 09:06 AM |
| Approved Up To: | $ 3,590.00 | Snap Funds Used: | $ 3,588.00 | Submitted On: | 03/14/2025 09:07 AM |
| Payment Amount: | $ 117.02 | First Payment Date: | 03/21/2025 | Approved On: | 03/14/2025 09:07 AM |
| Payment Frequency: | Weekly | Processing Amount: | $ 39.00 | Approved By: | |
| CPO Date: | 06/23/2025 | CPO Days: | 100 | Source: | Merchant |
| Completed On: | 03/14/2025 09:10 AM | Account Status | Charged Off | Factor Rate | 2.35 |
| Pay To Term Months: | 18 | Payoff Type | | Completed By: | User, Snap |
| Initial Decision: | | Decision Level: | Default Tires | UW Rule Version: | 4.07 |
| Agreement Method: | Esign | | | | |
| Updated On: | 03/14/2025 09:10 AM | | | | |

immediately paid for the items that the customer receives, ACIMA then bills the customer over a period of months to years. The total "lease" cost to the customer can be significantly higher than the original price of the item. ACIMA's participating retailers provide information to ACIMA including bank account information that allows ACIMA to deposit the purchase price of the items that are "leased" to the customer. A retailer will designate persons who can initiate a transaction on behalf of the retailer/seller. Danny's Tire Service has had a merchant account with Acima since 2018.

5

V stated that (s)he did not willingly apply for or authorize these transactions. IC-C threatened physical harm to V's family if (s)he did anything to close the two accounts. IC-C claimed to be a member of the Gulf Cartel (Cartel Del Golfo or "CDG") and showed V two photos as proof, one of which showed IC-C in a CDG gun vest, and one of which showed IC-C holding a large rifle.

## 2.
### Transaction #2 – Cash

V stated that (s)he was escorted out of the office by IC-C and **SALDANA**. V was told that (s)he would be killed if (s)he did not smile and act normally. V was then forced into an older model grey Ford Explorer, with **SALDANA** driving and IC-C seated in the back. V was then driven to two different bank branches and forced to withdraw cash as detailed below.

**SALDANA** and IC-C drove V to a Bank of America ATM located at 428 Mesquite Street, Corpus Christi, Texas, where V was ordered to withdrawal $6,000. The daily maximum allowed was $2,000, so V withdrew this amount.

A review of V's Bank of America statement showed a $2,000 ATM withdrawal confirming the transaction. Furthermore, video obtained from the bank showed that at approximately 11:05 a.m., a grey Ford Explorer bearing Texas license plate number TMZ4761[2] conducted the transaction. In the video, **SALDANA** can be seen driving the vehicle, as stated by V. IC-C can be seen seated in the back seat, while V was standing outside the rear driver's side of the vehicle making the cash withdrawal.

---

2 The license plate is registered to Maria Candelaria Garcia / Michelle Garcia Coronado at 1321 Maryland Drive, Corpus Christi, Texas. The investigation identified the vehicle as belonging to **SALDANA**'s girlfriend.

6



<u>3.</u>
<u>Transaction #3 – Cash</u>

V was then driven to Bank of America located at 3802 South Alameda Street, Corpus Christi, Texas.  V stated that an attempt was made to withdraw money from the ATM, but the transaction was denied.  IC-C then entered the branch with V, and once in the lobby, IC-C made small talk with V as though they were friends.  Once V was at the Teller window, IC-C walked away.  Ultimately, V withdrew $4,000 in cash, and as the two walked out of the bank, IC-C immediately took the cash.

A review of V's Bank of America statement showed a $4,000 withdrawal confirming the transaction.  Furthermore, video obtained from the bank showed that the events transpired as described by V.  When this transaction was completed, all three returned to the Danny's Tire Shop.

<u>4.</u>
<u>Transaction #4 – Credit</u>

After returning to the Danny's Tire Shop, **SALDANA** and IC-C rummaged through V's wallet and found an American Express card.  **SALDANA** and IC-C discussed what they should do with the card.  Ultimately, they decided to take V to the local Trade Show Center and purchase

7

jewelry, using the same grey truck bearing plate #TMZ4761 to transport V.

V stated that the name of the jewelry store was Zaman Jewelers. The store employee quoted **SALDANA** and IC-C $18,000 for the jewelry they wanted to purchase but settled on approximately $10,000. IC-C ordered a custom necklace with his daughter's name on it and was instructed by the store employee to come back in a few days with the receipt to pick it up or he would not get the necklace. IC-C told the employee that he would be killed if IC-C did not get the necklace. An open-source search located IC-C's Facebook account which showed a photo of a little girl wearing a gold necklace with a name plate attached. The post read, "Daddy's Princess." Furthermore, Hamzah Zaman, the owner of the jewelry store, commented on Adame's post saying, "Baller Solid Chino chain 10k." Agents believe that the necklace in the photo posted on IC-C's Facebook account is the necklace ordered by IC-C from Zaman Jewelers using V's credit card. American Express is headquartered in New York, New York.

A search for the location of Plate #TMZ4761 on March 14, 2025, was conducted in a law enforcement database. The vehicle was photographed at 12:38:01 PM CDT while it was parked in the lot of the Trade Center, thereby confirming V's rendition of the events of that day.

After the jewelry purchases were made, **SALDANA** and IC-C took V back to the Danny's Tire Shop. By then it was early afternoon. At this time V was told that (s)he could take his/her belongings that had been placed on a pool table inside the Danny's Tire Shop and leave. V stated that (s)he was certain that (s)he would be shot while walking away, but (s)he was allowed to leave. V drove his/her vehicle away, and after (s)he was sure that (s)he wasn't being followed, (s)he pulled off the freeway and went to Beeville where (s)he reported the incident to law enforcement.

8

The next day, FBI agents from Corpus Christi, Texas, went to San Antonio and met with V and began their investigation.

### III.

The undersigned has thoroughly reviewed, understands, and agrees that the information contained in this Stipulation of Fact is true and correct.

ROBERT LUIS SALDANA
Defendant

Date _Jan 28.26_

APPROVED:

RENE C. FLORES
Attorney for Defendant
APPROVED:

Date _1/28/26_

NICHOLAS J. GANJEI
United States Attorney

By: _____

AMANDA L. GOULD
Assistant United States Attorney
Federal I.D. No. 2771641
New Mexico State Bar Number: 16887
800 N. Shoreline Blvd., Suite 500
Corpus Christi, Texas 78401
(361) 888-3111
Amanda.gould@usdoj.gov

January 22, 2026.
Date

9